Williams, Judge,
delivered the opinion of the court:
Plaintiff entered into a contract with the Government for the construction of a tunnel and intake chamber at Great Falls, Maryland, as a part of a water supply system for the District of Columbia. The work was to be performed under the general direction and supervision of the contracting officer, and in accordance with the terms of detailed specifications which were a part of the contract. The work consisted of three items, (1) the intake chamber at Great Falls, (2) cut and cover conduit, and (3) construction of the tunnel, all to be performed at unit prices. The controversy in suit arises under the third item and relates to work performed by plaintiff in connection with the excavation of the tunnel.
The excavation in the tunnel was to be made within certain prescribed limits as shown on the drawing and as de *662 scribed in the specifications, at a unit price of $11.50 per cubic yard for the material removed from within a certain B line. During the progress of the work of excavating the ceiling of the tunnel caved in, under the circumstances set forth in findings V and VT, as a result of which 4,639 cubic yards of rock and other material fell into the tunnel, filling it up completely at the point where the break occurred. The progress of the work required the removal of this material and it was removed by plaintiff at the direction of the contracting officer. Upon the completion of the work plaintiff was paid the unit price of $11.50 per cubic yard for the excavation of the material originally within the B line, as determined by measurements and computations of the space within such line, but was not paid for the removal of the 4,639 cubic yards of material that fell into the B line as a result of the cave-in. The cost of the removal of this material at the unit price of $11.50 per cubic yard would be $53,348.50. The actual cost of its removal to plaintiff was $21,386.34.
The plaintiff contends that the work of removing the material in question was excavation within the meaning of the contract, for which it is entitled to be paid the unit price of $11.50 per cubic yard. It contends in the alternative, that if recovery may not be had on that basis, it is entitled to recover, (1) as for extra work done at the direction of the officer in charge for which the Government received the benefit, or (2) on the basis of the reasonable cost of the removal of the material as for extra work not contemplated in the contract, made necessary by the act of the defendant’s officer in charge of its execution.
The defendant contends that the plaintiff was solely responsible for the safety of the work and was obligated to furnish a completed tunnel at the unit prices stated in the contract; that plaintiff’s obligations, among other things, included furnishing and placing in the tunnel all timbering necessary to protect the excavation until after the concrete masonry lining had been put in place, whether such timber-ing was required by the contracting officer or not, and that having failed to do the necessary timbering to protect the *663 excavation it was the duty of plaintiff to remove the material that fell into the tunnel as a result of the cave-in at its own cost.
It is conceded the cave-in would not have occurred had the ceiling of the tunnel been timbered at the point of the break. It is also conceded that the plaintiff performed the work of excavating in accordance with the contract specifications and as directed by the defendant’s officer in charge of the work who was at all times present and exercised general supervision over it. This officer, before the cave-in, examined the ceiling at the point where the break occurred and determined that it was not necessary to timber the section. He did not order plaintiff to install timbering and it was not done. The cave-in took place thereafter, upon the explosion of the dynamite in the blasting operation described in finding V.
The specifications covering the installation of timbering read:
“ Where it is necessary to support the excavation in the tunnel and when required by the contracting officer, the contractor shall do all timbering necessary to protect the excavation until after the concrete masonry lining has been put in place. All timber placed in the tunnel shall be of good sound quality and of a kind and size which is suitable for the work. Timbering shall be done in a workmanlike manner and so as to best fulfill the requirements of the particular work in which it is used. The contractor will be allowed considerable latitude in the method of timbering, but it must be of ample strength to be entirely safe and also such as to meet the approval of the contracting officer. The contractor will not be relieved, however, of entire responsibility for any damage or accident caused by failure of the timbering in any case. * * *
“ The material and labor for timbering in the tunnel will be furnished by the contractor and paid for as such for the amount actually used in feet board measure, at the price bid by the contractor.”
The contract provision as to timbering required plaintiff to “ furnish and place about forty-eight thousand (48,000) feet board measure of timber and lumber for timbering shafts and tunnel, at fourteen cents ($0.14) per foot board measure.”
*664 These provisions, we think, placed sole responsibility on the contracting officer to determine where timbering was necessary to protect the excavation. The phrase, “ where it is necessary to support the excavation ”, immediately preceding the phrase, “ and when required by the contracting officer ”, did not create a joint responsibility on the part of the plaintiff and the contracting officer to determine the necessity for timbering. The plaintiff’s obligation was to install timbering for the protection of the excavation “ where it is necessary ” and “ when required by the contracting officer ” — not one or the other but both. The provision does not read “ where it is necessary * * * or when required by the contracting officer ”, as the defendant, in effect, contends. The word “ and ” is used and must be accorded its usual meaning. Crooks v. Harrelson, 282 U.S. 55. The cost of timbering fell on the Government.’ For this reason no doubt, the responsibility was placed on the contracting officer to determine where timbering was necessary before the additional expense of its installation was incurred. The parties placed this construction on the contract at the time the excavating was being done, and the plaintiff installed timbering only when ordered to do so by the contracting officer’s representative. The cost of timber-ing the entire tunnel would have been $71,000, the amount actually paid for that item was $9,828.00. The fact that plaintiff’s representative may have concurred in the mistaken judgment of the defendant’s officer in charge that tim-bering was not necessary in the section of the tunnel where the cave-in occurred- did not relieve the defendant of-its responsibility to make such determination, and did not make the plaintiff responsible, or jointly responsible with the defendant for failure to protect the excavation by necessary timbering at that point. The sole duty of determining where timbering was necessary rested on the contracting officer, the plaintiff being charged only with the duty of timbering when required and ordered by the contracting officer to do so. The defendant’s contention, therefore, that the ■ plaintiff' was obligated by the contract to remove the material in'question because of a failure oh its .part to *665 protect the excavation, by the installation of necessary timbering cannot be sustained.
As to plaintiff’s first contention, we think the contract price of $11.50 per cubic yard for material excavated had reference to the removal only of such material as was originally within the B line of the tunnel, which was estimated to be about 14,000 cubic yards. The specifications provide:
“ 56. Excavation in tunnels. — The excavation * * * includes all the work of this class necessary in the tunnels and in the drainage tunnels therefrom. The excavation shall be made within the prescribed limits as shown on the drawing and as described in these specifications. The contractor shall make all excavation in accordance with reference lines A, B, and C, * * * but with the understanding that no excavation removed beyond the ‘ B 5 line will be paid for. * * *
“ The price bid for excavation in tunnels shall cover the cost of all necessary blasting, barring, and mucking material encountered, bailing, draining, and pumping water which may leak into excavation, and the disposition of all excavated material as may be directed. * * * The actual amount of material excavated within the ‘ B ’ line will be paid for by the cubic yard at the price bid by the contractor, which shall include the entire cost of excavating * * *. .
. “ 46. Measukements.' — -The quantities to be paid for in the units given in the proposal will be determined by measurements and computations made by the representatives of the contracting officer within the lines to be paid for and the actual quantities so determined will be used as a basis for payment.”
Obviously “the quantities to be paid for in the units given ” could not be determined by measurements and computations “ within the lines to be paid for ” if material other than that originally in place within such line was to be included. That payment for the removal of such material from the B line of the tunnel at the unit price fixed for excavating was not contemplated is further shown by the provisions of paragraph 54 of the specifications for sheeting and bracing the sides of excavations when necessary for the proper protection of the work, and paragraph 56 of the specifications for timbering the ceiling of the tunnel when necessary to protect the excavation. The purpose of these *666 provisions was to prevent outside material from falling into the B line of the tunnel as the work of excavation proceeded, and their presence in the specifications negatives the contention that the contract price of $11.50 per cubic yard for excavating covered the removal of such material.
The removal of the 4,639 cubic yards of material that fell into the tunnel as a result of the cave-in was not covered in any provision of the contract, although its removal was necessary to the completion of the contract. It was not extra work within the meaning of articles 6 and T of the contract which required a change order or an agreement in writing to entitle the plaintiff to compensation for its performance. It was additional work, not within the contemplation of the parties when the contract was made, performed by plaintiff at the instance and direction of an authorized representative of the United States, the contracting officer. The defendant received the full benefit of the additional work. In these circumstances the plaintiff is entitled to recover the reasonable value of the additional services rendered, as upon an implied contract. While plaintiff in the petition makes no claim upon an implied contract for gucmtwn meruit, the forms of pleadings in this court are such that judgment may properly be awarded in the amount justly due plaintiff upon the facts alleged, although due in a different aspect from that in which the demand is stated in the petition. Clark v. United States, 95 U.S. 539; District of Columbia v. Barnes, 191 U.S. 146; Wood et al. v. United States, 49 C.Cls. 119; Wilcox v. United States, 56 C.Cls. 224.
• Plaintiff under the facts shown is entitled to recover from the defendant the sum of $21,386.34 and judgment in that amount is awarded. It is so ordered.
Whaley, Judge; LittletoN, Judge; GREEN, Judge; and Booth, Chief-Justice, concur.